1

2

3

4

5

6

7

8

9

10

11

12          IN THE UNITED STATES DISTRICT COURT

13          FOR THE EASTERN DISTRICT OF CALIFORNIA

14

15

FRANK AYON,                                      CASE NO. CV F 12-0355 LJO SKO
16
                           Plaintiff,            **ORDER TO DISMISS**
17          vs.                                  (Doc. 4.)

18   JPMORGAN CHASE
     BANK, N.A.,
19
                           Defendant.
20
     _____/
21

22                              __INTRODUCTION__

23          Defendant JPMorgan Chase Bank, N.A. ("Chase"), seeks to dismiss as legally barred and time

24   barred plaintiff Frank Ayon's ("Mr. Ayon's") statutory and fraud claims arising from his loan for and

25   foreclosure of his Visalia property ("property").  Mr. Ayon filed no papers to oppose dismissal of his

26   claims.  This Court construes Mr. Ayon's complaint ("complaint") as an attempt to thwart, delay or

27   complicate property foreclosure.  For the reasons discussed below, this Court DISMISSES this action

28   based on the absence of Ms. Ayon's viable, credible claims and VACATES the April 16, 2012 hearing

                                                  1

1   set by Chase, pursuant to Local Rule 230(c), (g).

2                                    **BACKGROUND**[1]

3          On March 1, 2006, Mr. Ayon obtained from Washington Mutual Bank ("Washington Mutual")

4   a $251,665 loan secured by a deed of trust on the property.  Chase acquired certain Washington Mutual

5   assets and liabilities, including Mr. Ayon's loan.  After Mr. Ayon defaulted on the loan, foreclosure of

6   the property was initiated with notices of default and trustee's sale recorded on July 24, 2009 and

7   October 27, 2009.  On October 5, 2010, a rescission of notice of default and election to sell under deed

8   of trust was recorded.

9                                 **Mr. Ayon's Claims**

10         The complaint's thrust is that "Defendants[2] induced Plaintiff to accept Defendants [sic] risky loan

11  product" by failing to disclose properly interest rate increases, misrepresenting that Mr. Ayon could

12  refinance the loan with increased property value, and steering Mr. Ayon "away from safer, fixed rate,

13  prime loans."  The complaint accuses "Defendants" of knowing that the loan "may result in foreclosure,

14  absent serial refinancing into even higher cost loans" and of failing to "account for borrowers [sic]

15  ability to repay the Defendants [sic] loans."  The complaint includes California and federal statutory and

16  as well as fraud claims which will be discussed below.

17                                   **DISCUSSION**

18                   **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

19         Chase seeks to dismiss the complaint's "defective" claims as barred legally and by limitations

20  periods.

21         "When a federal court reviews the sufficiency of a complaint, before the reception of any

22  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

23  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

24  claims."  *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

25  _____

26         [1]        The factual recitation is derived generally from the complaint, the subject of Chase's challenges, as well
            as matters of which this Court may take judicial notice.  The complaint was filed on February 2, 2012 in Tulare County
27          Superior Court, prior to Chase's removal to this Court.  Records pertaining to the property loan and foreclosure were recorded
            with in the Tulare County Official Records.

28         [2]        The complaint identifies Chase as the only defendant.

*Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

3

explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).  For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may

4

1  be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and*

2  *Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

3        With these standards in mind, this Court turns to Chase's challenges to the complaint's claims.

4  **Liabilities Attributable To Washington Mutual**

5        Chase contends that it is not subject to claims based on Washington Mutual's loan origination

6  and servicing.  Chase points to its September 25, 2008 Purchase and Assumption Agreement ("P&A

7  Agreement") with the Federal Deposit Insurance Corporation ("FDIC"), which provides that "any

8  liability associated with borrower claims for payment of or liability to any borrower for monetary relief,

9  or that provide for any other form of relief to any borrower . . . related in any way to any loan or

10  commitment to lend made by the Failed Bank [Washington Mutual] prior to failure . . . are specifically

11  not assumed by the Assuming Bank [Chase]."

12        Chase argues that the P&A Agreement expressly disclaims Chase's assumption of liability

13  arising from borrowers' claims and renders FDIC as responsible for such claims.  A fellow district court

14  has explained:

15        . . . the FDIC is the appropriate party regarding "any liability associated with
borrower claims for payment of or any liability to any borrower for monetary relief, or

16  that provide for any other form of relief to any borrower." *Yeomalakis v. FDIC*, 562 F.3d
56, 60 (1st Cir.2009). Thus the FDIC was and remains the appropriate party in interest.

17  *See* 12 U.S.C. § 1821(d)(2)(A)(i); *see also In re Community Bank of N. Virginia*, 418
F.3d 277, 293 n. 6 (3d Cir.2005). Accordingly, Plaintiff has failed to state a claim against

18  Defendant Chase and the Court GRANTS Defendants' motion to dismiss Plaintiff's
claims against Chase.

19

20  *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 960 (N.D. Cal. 2010); *see Biggins v.*

21  *Wells Fargo & Co.*, 266 F.R.D. 399, 415 (N.D. Cal. 2009) (plaintiff's claims "fall within Section 2.5 of

22  the Purchase and Assumption Agreement and, thus, any liabilities associated with those were not

23  assumed by Chase. All claims against Chase are dismissed on this basis.")

24        Chase is correct that Mr. Ayon lacks a legal basis to pursue claims against Chase in connection

25  with Washington Mutual's loan and related lending and servicing conduct.  The P&A Agreement

26  disclaims Chase's liability arising from the complaint's claims directed toward Washington Mutual.

27  **Unfair Competition Law And Business Practices**

28        The complaint's first claim purports to allege violations of California's Unfair Competition Law

("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq.  The claim accuses "Defendants" of making "untrue and misleading statements" as to "the duration of the original payment, duration and amount of interest rate," quick refinancing, and absence of a prepayment penalty and payments of kickbacks, fees or other "things of value" to violate the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq.  The claim further alleges: "Defendants failed to consider Plaintiff's ability to repay his mortgage and failed to disclose the cost of his mortgage as required" by  the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq.

The complaint's (sixth) unfair business practices claim alleges: "Defendants' fraudulent acts, business model, and change of underwriting standards were designed to create an environment of unfair business practices in which Defendants could wrongfully profit.  These actions included artificially raising the value of the home in order to allow for a larger loan to maximize the Defendants [sic] profits."

### *Conclusory Allegations*

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  "A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation."  *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

Chase correctly attacks the UCL and unfair business practices claims as conclusory.  The complaint fails to identify an ongoing unlawful, unfair or fraudulent business practice or advertising attributable to Chase.

### *Vicarious Liability*

Chase further faults the complaint's attribution of "vague misrepresentations" to unidentified mortgage brokers who acted for Mr. Ayon, not the lender.  *See Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 782, 157 Cal.Rptr. 392 (1979) ("A mortgage loan broker is customarily retained by a borrower to act as the borrower's agent in negotiating an acceptable loan.") Chase is correct that UCL liability may not rest on secondary liability.  The California Court of Appeal has explained:

1

2

3

4

> We need go no further than to remind plaintiff that his unfair practices claim under section 17200 cannot be predicated on vicarious liability. "The concept of vicarious liability has no application to actions brought under the unfair business practices act." (*People v. Toomey* (1984) 157 Cal.App.3d 1, 14 [203 Cal.Rptr. 642] (*Toomey*).) A defendant's liability must be based on his personal "participation in the unlawful practices" and "unbridled control" over the practices that are found to violate section 17200 or 17500. (*Toomey, supra*, 157 Cal.App.3d at p. 15.)

5    *Emery v. Visa Internat. Service Ass'n*, 95 Cal.App.4th 952, 960, 116 Cal.Rptr.2d 25 (2002).

6    The complaint fails to identify Chase's specific unfair practices to doom the UCL and unfair

7    business practices claims.

8                                      ***Standing***

9    Chase attacks Mr. Ayon's lack of standing to pursue UCL and unfair business practices claims.

10    California Business and Professions Code section 17204 limits standing to bring a UCL claim

11    to specified public officials and a private person "who has suffered injury in fact and has lost money or

12    property as a result of the unfair competition."   "This provision requires [plaintiff] to show that she has

13    lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution,

14    *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir.2009), and also requires a 'causal connection'

15    between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th

16    847, 70 Cal.Rptr.3d 466, 471–72 (2008)."   *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th

17    Cir. 2010).

18    Business and Professions Code section 17203 addresses UCL relief and provides in pertinent

19    part:

20

21

22

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any **money or property**, real or personal, which may have been acquired by means of such unfair competition.  (Bold added.)

23    "In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's

24    remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

25    950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

26    *Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

27    Defendants correctly note that Mr. Ayon "has no actual loss because he borrowed money and has

28    not repaid the loan."  The complaint lacks facts of Mr. Ayon's money or property allegedly lost due to

7

1    a UCL violation or an unfair business practice.  The complaint lacks facts to support plaintiffs' standing

2    to seek UCL relief or relief for unfair business practices to warrant dismissal of the UCL and unfair

3    business practices claims.

4                                              **RESPA**

5           The complaint alleges that "Defendants" violated RESPA "when it [sic] provided undisclosed

6    financial incentives, fees, payments and other 'things of value' to its agents, account executives, loan

7    officers and brokers marketing and selling its product, . . . constituting a prohibited kickback, referral

8    fee or other 'things of value.'"  The complaint's second claim alleges that "Defendants" engaged in

9    prohibited RESPA acts, such as, "[s]tatements regarding the terms and payment obligations, including

10   statement of the duration of the original payment, duration and amount of the interest rate" and

11   "[s]tatements regarding the prepayment penalty, including that the loan had no prepayment penalty or

12   that the prepayment penalty could easily be waved [sic] by making payments of kickbacks, fees or other

13   'things of value.'"

14          Chase challenges the complaint's RESPA claims as time barred and points to 12 U.S.C. § 2614's

15   one-year limitations for violations of 12 U.S.C. § 2607.[3]  "The statute of limitations for private plaintiffs

16   suing under RESPA is one year from the 'date of the occurrence of the violation.'"  *Edwards v. First*

17   *American Corp.*, 517 F.Supp.2d 1199, 1204 (C.D. Cal. 2007) (quoting 12 U.S.C. § 2614).  The "primary

18   ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high settlement charges' caused

19   by kickbacks, fee-splitting, and other practices that suppress price competition for settlement services.

20   This ill occurs, if at all, when the plaintiff pays for the service, typically at the closing."  *Snow v. First*

21   *American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003) (quoting 12 U.S.C. §2601(a)).  Mr. Ayon

22   closed his loan in March 2006, well more than a year prior to the complaint's February 2, 2012 filing

23   to bar RESPA claims in connection with loan origination.  The complaint's vague allegations as to

24   statements made in connection with loan origination fail to disrupt the limitations defense.

25          Moreover, there is no private right of action under RESPA for disclosure violations.  RESPA's

26   purpose is to "curb abusive settlement practices in the real estate industry.  Such amorphous goals,

27

28        [3]        12 U.S.C. § 2607(a) prohibits referral payments for real estate settlement services, and 12 U.S.C. § 2607(b) prohibits receipt of "any portion, split or percentage" of a settlement service fee, except for performed services.

1  however, do not translate into a legislative intent to create a private right of action." *Bloom v. Martin*,

2  865 F.Supp. 1377, 1385 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (1996). "The structure of RESPA's various

3  statutory provisions indicates that Congress did not intend to create a private right of action for

4  disclosure violations under 12 U.S.C. § 2603 . . . Congress did not intend to provide a private remedy

5  . . ." *Bloom*, 865 F.Supp. at 1384.

6        The absence of a private right of action further dooms a purported RESPA claim based on

7  disclosure violations.

8        Chase also notes that a rescission claim under 12 U.S.C. § 2614 is barred by the statute's three-

9  year limitations period.  Chase is correct in that Mr. Ayon filed his complaint nearly six years after loan

10 closing.

11       The complaint's RESPA claims fail as a matter of law.

12                                    **TILA**

13       To support a TILA violation, the complaint's third claim alleges: "Defendants failed to examine

14 Plaintiff's current and expected 'Repayment Ability'" and "[f]ailed to clearly and conspicuously disclose

15 to Plaintiff key provisions of Plaintiff's mortgage, including . . . the eventually reset interest rate, specific

16 loan terms, and the total dollar amount the mortgage will cost over time."

17       Chase contends that TILA claims are time barred.

18                         ***Damages Limitations Period***

19       A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a

20 TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA

21 requires that any claim based on an alleged failure to make material disclosures be brought within one

22 year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d

23 1176, 1183 (D. Or. 2005).  The limitations period runs from the date of a transaction's consummation

24 which is the time that a consumer becomes contractually obligated on a credit transaction.  *Monaco v.*

25 *Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008).  The Ninth

26 Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

27            The failure to make the required disclosures occurred, if at all, at the time the loan
             documents were signed.  The [plaintiffs] were in full possession of all information
28           relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day

                                        9

1    the loan papers were signed.

2       TILA damages claims are time barred in that Mr. Ayon consummated his loan in March 2006

3 and filed his complaint on February 2, 2012, nearly six years after his loan transaction. TILA damages

4 claims are doomed.

5 <center>***Rescission Limitations Period***</center>

6       To the extent that the complaint pursues a TILA rescission claim, it too is time barred.

7       TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without

8 penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

9 *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a). TILA rescission may be

10 extended up to three years if the lender fails to comply with TILA disclosure requirements. *Semar*, 791

11 F.2d at 701-702; 15 U.S.C. § 1635(f).

12       15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

13      An obligor's right of rescission **shall expire three years after the date of**
14      **consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor
15      . . . (Bold added.)

16       The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after

17 the three-year period has run:

18       Section 1635(f), however, takes us beyond any question whether it limits more
19 than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a
20 suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous.
21 There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that
22 provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*,
23 at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

24

25 *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998); *Miguel v. Country Funding*

26 *Corp.,* 309 F.3d 1161, 1164 (9th Cir. 2002) ("§ 1635(f) is a statute of repose, depriving the courts of

27 subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period").

28       With Mr. Ayon's loan consummated in March 2006, a TILA rescission remedy expired prior to

<center>10</center>

1   the February 2, 2012 filing of Mr. Ayon's complaint.  TILA rescission is time barred.

2   ***Equitable Tolling/Delayed Discovery***

3   Chase argues that the complaint lacks allegations to delay accrual of the limitations periods.

4   "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital

5   information bearing on the existence of his claim." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178

6   (9th Cir. 2000).  The Ninth Circuit has explained:

> Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by
> the defendant to prevent the plaintiff from suing.  Instead it focuses on whether there was
> excusable delay by the plaintiff.  If a reasonable plaintiff would not have known of the
> existence of a possible claim within the limitations period, then equitable tolling will
> serve to extend the statute of limitations for filing until the plaintiff can gather what
> information he needs. . . . However, equitable tolling does not postpone the statute of
> limitations until the existence of a claim is a virtual certainty.

11  *Santa Maria*, 202 F.3d at 1178 (citation omitted).

12  Courts are reluctant to invoke equitable tolling:

> A statute of limitations is subject to the doctrine of equitable tolling; therefore,
> relief from strict construction of a statute of limitations is readily available in **extreme
> cases** and gives the court latitude in a case-by-case analysis. . . . The equitable tolling
> doctrine has been applied by the Supreme Court in certain circumstances, but it has been
> applied sparingly; for example, the Supreme Court has allowed equitable tolling when
> the statute of limitations was not complied with because of defective pleadings, when a
> claimant was tricked by an adversary into letting a deadline expire . . . Courts have been
> generally unforgiving, however, when a late filing is due to claimant's failure "to exercise
> due diligence in preserving his legal rights." . . .

18  *Scholar v. Pac. Bell*, 963 F.2d 264, 267-268 (9th Cir. 1992) (bold added; citations omitted).

19  The "mere existence of TILA violations and lack of disclosure does not itself equitably toll the

20  statute of limitations. This is sensible, because it is in line with the generally applicable principles of

21  equitable tolling, and because a contrary rule would render the one-year statute of limitations

22  meaningless, as it would be tolled whenever there were improper disclosures." *Garcia v. Wachovia*

23  *Mortg. Corp.*, 676 F.Supp.2d 895, 906 (C.D. Cal. 2009).   "Where the basis of equitable tolling is

24  fraudulent concealment, it must be pled with particularity under Rule 9(b) of the Federal Rules of Civil

25  Procedure." *Marzan v. Bank of America*, 779 F.Supp.2d 1140, 1149 (D. Haw. 2011) (citing *389 Orange*

26  *St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir.1999)).

27  Under the discovery rule, "the limitations period does not accrue until the aggrieved party has

28  notice of the facts constituting the injury." *E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal.App.4th

1308, 1318, 64 Cal.Rptr.3d 9 (2007).  "The 'discovery rule' . . . assumes that the elements of accrual including harm exist, but tolls the ruling of the statute until the plaintiff is on inquiry notice of its injury (and its wrongful cause)."  *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995). To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)).

To satisfy the time and manner of discovery requirement, a plaintiff must allege "facts showing the time and surrounding circumstances of the discovery of the cause of action upon which they rely." *Bennett v. Hibernia Bank*, 47 Cal.2d 540, 563, 305 P.2d 20 (1956).  "The purpose of this requirement is to afford the court a means of determining whether or not the discovery of the asserted invasion was made within the time alleged, that is, whether plaintiffs actually learned something they did not know before." *Bennett*, 47 Cal.2d at 563, 305 P.2d 20.

Moreover, "to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period."  *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661.  The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action. *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566 (1998).  The plaintiff  must show that it was not at fault for failing to discover or had no actual or presumptive knowledge of facts sufficient to put it on inquiry.  *Prudential Home*, 66 Cal.App.4th at 1247, 78 Cal.Rptr.2d 566.  As to sufficiency of delayed discovery allegations, a plaintiff bears the burden to "show diligence" and "conclusory allegations" will not withstand dismissal.  *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

The complaint lacks necessary allegations for equitable tolling or delayed discovery.  The complaint references vague TILA discrepancies and makes sweeping references to failure to disclose "key provisions of Plaintiff's mortgage." The complaint lacks allegations that Mr. Ayon was prevented

to compare what documents he received to the TILA disclosure requirements. *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (no evidence suggested that lender concealed its alleged breach). Nothing suggests that Mr. Ayon lacked information relevant to discovery of a TILA violation when Mr. Ayon's loan was consummated. The complaint offers nothing to demonstrate that despite Mr. Ayon's due diligence, he was unable to obtain information of a TILA violation. The complaint is silent as to Mr. Ayon's purported due diligence. Moreover, the limitations period for TILA rescission is a statute of repose not subject to equitable tolling or delayed discovery. TILA claims are time barred.

### *Failure To Tender*

Chase further argues that TILA rescission claims are barred by Mr. Ayon's failure to tender amounts owed on his loan.

Under TILA, the "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) addresses rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or

13

1    inequitable, tender its reasonable value. At the consumer's option, tender of property may
     be made at the location of the property or at the consumer's residence. Tender of money
2    must be made at the creditor's designated place of business. If the creditor does not take
     possession of the money or property within 20 calendar days after the consumer's tender,
3    the consumer may keep it without further obligation.  (Bold added.)

4         Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's mere

5    assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank*

6    *of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*,

7    292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit, relying on *Large*, explained:

8         Instead, the "natural reading" of the language of § 1635(b) "is that the security interest
          becomes void when the obligor exercises a right to rescind that is available in the
9         particular case, either because the creditor acknowledges that the right of rescission is
          available, or because the appropriate decision maker has so determined. . . . Until such
10        decision is made the [borrowers] have only advanced a claim seeking rescission."

11   *Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

12        A rescission notice is not automatic "without regard to whether the law permits [borrower] to

13   rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission

14   automatically "makes no sense . . . when the lender contests the ground upon which the borrower

15   rescinds." *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest

16   vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a

17   secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed

18   any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

19        Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest

20   and return of the money within twenty days of the notice of rescission, we believe this assumes that the

21   notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007).

22   A "court may impose conditions on rescission that assure that the borrower meets her obligations once

23   the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has

24   explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may

25   require borrowers to prove ability to repay loan proceeds:

26        As rescission under § 1635(b) is an on-going process consisting of a number of
          steps, there is no reason why a court that may alter the sequence of procedures after
27        deciding that rescission is warranted, may not do so before deciding that rescission is
          warranted when it finds that, assuming grounds for rescission exist, rescission still could
28        not be enforced because the borrower cannot comply with the borrower's rescission

                                                     14

1

2

3

4

obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

5

6

7

8

9

10

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds given the lender's non-egregious TILA violations and equities heavily favoring the lender).[4]

11

12

13

14

15

16

The complaint does not address conditions precedent to permit rescission under TILA. Neither the complaint nor record indicate Mr. Ayon's meaningful ability to tender amounts owed under his loan. Moreover, the complaint is not a timely, valid rescission notice. "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821. Without Mr. Ayon's meaningful tender, purported TILA rescission claims are doomed.

17

**Fraud**

18

19

20

21

22

The complaint's (fourth) fraud claim alleges that "Defendants made their false representations to the terms and conditions of the loan and of the value of the property . . . with intent that Plaintiff would rely on them and sign the loan documents." The complaint's (fifth) fraud in the inducement claim alleges that to induce Mr. Ayon to agree to his loan, "Defendants made a series of fraudulent promises," including "statements about the increase of value of the property, the ease that refinancing would occur,

23

24

[4]     The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

25

26

Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

27

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

28

15

1   the monthly payments and interest rate."  The complaint's (seventh) violation of California Civil Code

2   section 1572 claim alleges Defendants "misrepresentations . . . failures to disclose, and failure to

3   investigate . . . were made with the intent to induce Plaintiff to obligate himself on the Loan."

4       Chase attacks the complaint's fraud-based claims as lacking sufficient particularity to satisfy

5   F.R.Civ.P. 9(b).

6                                      ***Fraud Elements***

7       The elements of a California fraud claim are: (1) misrepresentation (false representation,

8   concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

9   to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

10   631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent

11   misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

12   *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

13       "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

14   specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

15   156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

16   the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

17   actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." 

18   *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements

19   will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

20   Cal.Rptr. 355 (1986).

21                               ***Particularity Pleading Standard***

22       F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5]

23   In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s

24   particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D.

25

26       [5]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court
27   will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the
     Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess*
28   *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir.
     1995)(italics in original)).

Cal. 2003).  A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P.

9(b)'s heightened pleading requirements.  *Vess*, 317 F.3d at 1107.[6]  A motion to dismiss a claim

"grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional

equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim.  *Vess*, 317 F.3d at

1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of

the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's

requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of

unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  F.R.Civ.P 9(b) requires

"specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged

to constitute the fraud charged so that they can defend against the charge and not just deny that they have

done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient

under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an

adequate answer from the allegations."  *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993)

(internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th

Cir. 1997)).  The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud.  The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud.  The statement in question must be false to be fraudulent.  Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .  The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in

original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal*

---

[6]    "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

*Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

The complaint lacks facts to identify specific statements, who made statements, authority to make statements, and when statements were made. The complaint merely relies on undefined statements to induce Mr. Ayon to accept his loan. The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard. The complaint lacks precise allegations to identify what Chase or another entity, through specifically identified and authorized agents or representatives, allegedly promised or represented. The

18

1   complaint lacks facts to support fraud elements let alone the who, what, when, when and how of alleged

2   misconduct and the heightened federal pleading standard.  The complaint relies on mere notions that Mr.

3   Ayon could avoid increasing interest rates without supporting facts or necessary details.  The complaint's

4   incomplete allegations are insufficient to warrant dismissal of the complaint's claims sounding in fraud.

5                                          *Limitations Period*

6          Chase challenges the complaint's fraud claims as barred by the three-year limitations period of

7   California Code of Civil Procedure section 338(d) ("action for relief on the ground of fraud") in that Mr.

8   Ayon closed his loan in March 2006 and delayed until February 2, 2012 to file his complaint.

9          Chase is correct that the complaint's fraud claims are susceptible to the limitations defense to

10  further warrant their dismissal.

11                            **Attempt At Amendment And Malice**

12         As discussed above, the complaint's global claims are barred legally, and Mr. Ayon is unable to

13  cure the complaint's claims by allegation of other facts and thus is not granted an attempt to amend.

14  Moreover, this Court surmises that Mr. Ayon brought this action in absence of good faith and seeks to

15  exploit the court system to delay or to vex Chase's plans for the property.  The test for maliciousness is

16  a subjective one and requires the court to "determine the . . . good faith of the applicant."  *Kinney v.*

17  *Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th

18  Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss

19  case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can

20  be inferred from a complaint containing untrue material allegations of fact or false statements made with

21  intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).  An attempt to vex

22  or delay provides further grounds to dismiss this action.

23                            **CONCLUSION AND ORDER**

24         For the reasons discussed above, this Court:

25         1.       DISMISSES with prejudice this action against Chase; and

26  / / /

27  / / /

28  / / /

                                          19

1    2.    DIRECTS the clerk to enter judgment in favor of defendant JPMorgan Chase Bank,

2        N.A., and against plaintiff Frank Ayon and to close this action.

3    IT IS SO ORDERED.

4  **Dated:    April 9, 2012**              /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28